UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------x
Zerrad AOUTIF,

                Plaintiff,

  -against-                              MEMORANDUM AND ORDER
                                                    05-CV-496 (ILG)
CITY UNIVERSITY OF NEW YORK, York
College,

                Defendant.
-------------------------------------------------x

GLASSER, United States District Judge:

In this action Zerrad Aoutif ("plaintiff") alleges that the City University of New York, York College ("defendant" or "CUNY") improperly withdrew her from an elementary French class as a result of her race, color, or national origin. Plaintiff asserts a sole cause of action under the Title VI of the Civil Rights Act ("Title VI" or the "Act"), 42 U.S.C. § 2000 (d). Plaintiff originally asserted additional causes of action under 42 U.S.C. §1983 and 42 U.S.C. § 1985(3). Those claims are considered abandoned. See Pl. Mem. in Opp. to Def. Mot. to Dismiss, ("Pl. Mem.") at 1 ("The Amended Complaint lists several causes of action, two of which will be withdrawn under separate filing. This present memorandum focuses on 42 U.S.C. § 2000 (d)."). Pending before the Court is defendant's motion to dismiss the Title VI claim under Rule 12(b)(6).

## FACTS

The facts are cast in the light most favorable to plaintiff, as is required on a motion to dismiss. Plaintiff is a woman of Arabic descent, born in Morocco, who

enrolled at CUNY as a freshman during the fall semester of 2001. (Am. Compl., ¶¶ 1,2).[1] During that fall semester, plaintiff enrolled in a French class in order to fulfill credits towards her degree. (¶3).

In the shadow of the "tumultuous upheaval" associated with September 11, 2001, a time in which plaintiff asserts that "most people questioned the motives of most Arabs in America," plaintiff states she was "severely mistreated" by Homini Bahia, her French professor. (¶¶ 4, 5). The complaint alleges that Professor Bahia prevented plaintiff from obtaining credit for attendance, discouraged plaintiff from participating in class, pushed plaintiff, refused plaintiff entrance to the classroom, refused plaintiff's attempt to take the final exam, and issued a failing grade as a result. (¶5).

After being denied access to the classroom, Plaintiff "did everything in order to resolve the situation, meaning, [she] did everything just to have the opportunity to take the French exam and avoid a negative grade." (¶6). She spoke to Dr. Dephillipine, the Department Chair of Languages, who "did not permit her to return to class," and threatened that "security would escort [her] out of class." (Id.) Plaintiff "could not understand why [she] was treated in such a harsh manner," as, in her opinion, she "had not done anything to warrant expulsion from the class." (Id.). Plaintiff was also "devastated" that there was "no French class available to which [she] could transfer, and [she] did not want any negative record on [her] transcript." (¶7).

After telling plaintiff she could not return to class or complete the final exam, Dr. Dephillipine allegedly told plaintiff "You're from Morocco, you're Arab, An Arabic

---

[1]All paragraph references ("¶") refer to the Amended Complaint.

student who frightens a French Professor, can go to jail." (sic) (¶8). This statement "puzzled" plaintiff. (¶8).

Plaintiff "pleaded to several authorities within the College to allow [her] to take the final exam even if [she] was barred from . . . class." (¶9). At various times, plaintiff complained to Ms. Morin, from the Foreign Language Coordinator's Department; Stephanie Cooper, Assistant to the Provost; Dr. Schreiner, Dean of Student Support and Counseling; Abdelhamid Kherief, Coordinator and Professor of the English Program; Dr. Avis Hendrickson, Dean of Student Development; Dr. Charles C. Kidd, President of the College; Ms. Santiago, Member of the Committee of Academics; and Dean Avis Hendrickson, of the Student Development and Enrollment Management. No relief was obtained. (Id.).

On one occasion, Plaintiff spoke to an assistant of Dr. Schreiner, who "inquired as to how [she] knew French." (¶14). When plaintiff said that she was from Morocco, one of the assistants in the office said "Oh My God, Arab," and said to another secretary, "Bin Laden is here," indicating the plaintiff. (Id.). The assistant then displayed a poster stating "Bin Laden – Wanted Dead or Alive." (Id.).

"As a result of not being allowed to take the class final exam, the University issued a failing grade for that class in February 2002, affecting [plaintiff's] grade point average, and having a negative impact on [her] overall transcript." (¶10). Plaintiff's grades "began to suffer" because she "spent so much effort" attempting to repair the situation. (¶11).

After talking to a "plethora" of people, plaintiff was ultimately promised "removal of the failing grade from [her] transcript and a refund of the moneys paid for taking that

class." (¶12). She never received a refund, but defendant did convert the "WU" (unofficial withdrawal) to a "W" (withdrawn) (¶13). Both "W" and "WU" "are not favorable grades, and could be perceived unfavorably when applying for acceptance in a graduate school program." (¶13).

As a result of defendant's refusal to "complete[ly] remov[e] . . . any record pertaining to this class," plaintiff believed that her "dream of obtaining a degree in Medical Lab Technology would not be fulfilled at [the] University." (Id.). "After receiving no help from any of the authorities of the University," and because she felt "ostracized," "uncomfortable," and "unsafe," [she] became clinically depressed" and has been "under the treatment of several doctors" who have diagnosed her "with several disorders." (¶¶ 13, 15, 17).

It appeared to plaintiff that "all of the departmental heads agreed to not to help [her] get the grade dropped even though many had [her] attend appointments, follow "procedures" and policies to obtain relief, with no results." (¶16). "No final determinations, no internal hearings were ever made." (Id.). In conversations with "several departmental heads," "some mention of [her] Arabic heritage was made." Moreover, it appeared to plaintiff that "all had a united front, not to allow [her] to take the exam, and [to fail her] because they forbid her to take the exam." (Id.).

## DISCUSSION

Plaintiff brings her cause of action under Title VI of the Civil Rights Act, 42 U.S.C. § 2000(d), which provides that "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits

4

of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

A court must not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court takes the facts as alleged in the complaint to be true, and must draw all reasonable inferences from those facts in favor of the plaintiff. See e.g., Chosen Intern., Inc. v. Chrisha Creations, 413 F.3d 324, 327 (2d Cir.2005). Both parties have submitted materials outside of the pleadings to the court along with their memoranda of law in support of and opposing the motion to dismiss. "[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion," a district court must either "exclude the additional material and decide the motion on the complaint alone," or "convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material." Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988). This conversion requirement is strictly enforced whenever there is a "legitimate possibility" that the district court relied on material outside the complaint in ruling on the motion. Amaker v. Weiner, 179 F.3d 48, 50 (2d Cir.1999). This court has been careful not to commit error by considering affidavits or exhibits submitted by either party or relying on factual allegations contained in the briefs and memoranda. See Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir.1999).

**I.    Statute of Limitations**

The parties do not dispute that the claim is subject to a three-year statute of

limitations. See Curto v. Edmundson, 392 F.3d 502, 504 (2d Cir.2004) (federal courts look to state statutes of limitations for analogous federal discrimination claims); Folkes v. New York College of Osteopathic Medicine of New York Institute of Technology, 214 F.Supp.2d 273, 292 ("Title VI claims are time-barred pursuant to the applicable three year statute of limitations . . .").

Rather, they dispute the accrual date for the claim. Defendant contends that because plaintiff's injuries all arose out of actions which took place during the fall semester of 2001, this claim, which was filed on January 27, 2005, is time-barred. Plaintiff submits two theories on which the claim is not barred: First, she alleges that CUNY did not issue the grade until February 2002. Second, she argues that in addition to the actions which prevented her from attending class and taking the final exam, independent discriminatory acts occurred after January 27, 2002 while she appealed her grade.

"Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." Cullen v. Margiotta, 811 F.2d 698, 725 (2d Cir.1987). In the specific case of a discrimination claim, "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." Chardon v. Fernandez, 454 U.S. 6, 8 (1981) (emphasis in original).

Any claim based on plaintiff's receipt of a failing grade must be barred by the statute of limitations, because any allegedly discriminatory act which resulted in the failing grade must have taken place during the fall semester of 2001. Plaintiff's assertion that the fact that she didn't receive her grade until February, 2005, is unavailing; the receipt of a failing grade is a quintessential example of a consequential,

6

as opposed to a causal, act. Plaintiff acknowledges that she was precluded from taking the final exam, and that her failure to take the exam resulted in the failing grade. Even if the preclusion of her from the exam was a result of discriminatory acts, those acts necessarily occurred prior to the exam in December 2001. There is simply no inference available that Aoutif did not know of those acts prior to January 27, 2002, and more than three years before filing the complaint. Any claim based on those acts must therefore be barred by the statute of limitations. Cf. Putkowski v. Warwick Valley Central School District, 363 F.Supp.2d 649, 655 (S.D.N.Y.2005) (date of notice of intent to demote, as opposed to actual date of demotion, held to be the accrual date for purpose of disability discrimination claim) .

## II. Failure to State a Claim Under Title VI

Plaintiff's alternate theory of liability rests on the assertion that she was denied access to appeal her grade, and that the denial of such access constituted a Title VI violation. This action is not time-barred because a reasonable inference of plaintiff's complaint is that she continued her efforts to appeal the grade beyond February 2002.

In order to state a claim based on Title VI, the plaintiff must allege, *inter alia*, 1.) that the defendant discriminated against her on the basis of race; 2.) that that discrimination was intentional, and 3.) that discrimination was a substantial and motivating factor for defendant's actions. See Tolbert v. Queens College, 242 F.3d 58, 69 (2d Cir.2001). Moreover, the Supreme Court has held that in a claim such as this, that does not implicate the official policy of the defendant, "a damages remedy will not lie . . . unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual

7

knowledge of discrimination in the recipient's programs and fails adequately to respond." Gebser v. Lago Vista Independent School Dist., 524 U.S. 274, 290, (1998). Plaintiff has not stated any facts on which one could infer discriminatory intent or motivation on the part of CUNY in responding to her appeal. Furthermore, because she never notified CUNY of any alleged discrimination, CUNY has not had an opportunity to respond to any discrimination, if it exists. For those reasons, the claim cannot survive a motion to dismiss.

First, plaintiff's allegations do not amount to allegations of discriminatory intent or motivation. The only allegations in the complaint that could possibly relate to discrimination are as follows: an allegation that after September 11, 2001, "most people questioned the motives of most Arabs in America," (¶ 4); an allegation of the "puzzling" statement made by the department chair, "You're from Morocco, you're Arab, An Arabic student who frightens a French Professor can go to jail," (¶ 8); an allegation of two racially insensitive statements made by administrative assistants to a Dean, "Oh My God, Arab," and "Bin Laden is here," (¶ 14); and an allegation that it was plaintiff's "overall experience" that "some mention of [her] Arabic heritage was made" during the course of her appeal. (¶ 16). Such conclusory, isolated, and unspecified statements cannot provide a rational basis for inferring discriminatory intent or motivation, and a claim based on such allegations cannot survive a motion to dismiss. See Yusuf v. Vassar College, 35 F.3d 709, at 713. (2d Cir.,1994) (dismissing racial discrimination claim against university for failing to "specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent.").

Moreover, while plaintiff has detailed her grievances for being barred from class, for example that she "pleaded to several authorities within the College to allow [her] to take the final exam" and that she "did everything just to have the opportunity to take the French exam and avoid a negative grade," she does not allege that she notified CUNY authorities of any alleged racial discrimination, or that those authorities knew of the alleged discrimination and failed to respond. In the absence of such notice, plaintiff has not provided an opportunity for an adequate response by the university, and her Title VI claim cannot survive a motion to dismiss. See Crandell v. New York College of Osteopathic Medicine, 87 F.Supp.2d 304, 320 (S.D.N.Y.2000) ("institution must have actual knowledge of at least some incidents of harassment in order for liability to attach.") (citing Gebser, 524 U.S. at 274).

## **CONCLUSION**

The court concludes that the plaintiff's claim, alleging discriminatory acts which took place during the fall semester of 2001, is barred by the statute of limitations. Additionally, because plaintiff has failed to allege discriminatory motivation or intent, or that CUNY knew of the discrimination and failed to take corrective action, the claim fails under Title VI of the Civil Rights Act. Defendant's motion to dismiss is therefore granted. The Clerk of the Court is directed to close the case.

Dated:    Brooklyn, New York                    SO ORDERED.
          December 8, 2005.


                                                _____/s/_____
                                                I. Leo Glasser
                                                United States District Judge



Copies of the foregoing memorandum and order were sent to:

<u>Counsel for the Plaintiff</u>

Vernita Charles
Law Office of Vernita Charles
44 Court St Ste 1210,
Brooklyn, NY 11201

<u>Counsel for the Defendant</u>

Kathryn Carter Spann
New York State Attorney General
Litigation Bureau
120 Broadway, 24th Floor
New York, NY 10271

Steven Leon Banks
NYS Office of the Attorney General
120 Broadway, 24th Floor
New York, NY 10271